**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**STEVEN MICHAEL GOLDEN, Jr., et al.,**

          Plaintiffs,

v.

**UNIVERSAL HEALTH SERVICES, INC.,**
**Et al.**

          Defendants.

**CASE NO. 1:25-cv-00312-AHA**

---

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANT UNIVERSAL HEALTH SERVICES, INC.'S RULE 12(B)(2) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   STANDARD OF REVIEW .................................................................................... 3

III.  ARGUMENT............................................................................................................ 3

   A.   The District of Columbia Long-Arm Statute confers personal jurisdiction over UHSI. .... 5

      1.   UHSI derives substantial revenue from its behavioral healthcare facilities, including PIW. 7

      2.   UHSI advertises PIW as one of "Our Locations," advertises its services in the District of Columbia, and purposefully markets to D.C. residents. ..................................................... 9

      3.   UHSI publicly lists jobs for PIW and solicits applications.......................................... 12

      4.   PIW officers and staff represent that they are UHSI employees or agents. .................. 14

      5.   UHSI creates and disseminates policies and procedures that govern PIW. .................. 15

      6.   UHSI entered into a Corporate Integrity Agreement governing PIW services............. 17

B.    The Court may exercise personal jurisdiction over UHSI based on the contacts of its agent, UHSD. ................................................................................................................. 20

C.    Personal jurisdiction over UHSI satisfies due process. ..................................................... 23

D.    Alternatively, the Court should permit limited jurisdictional discovery............................ 25

IV.   CONCLUSION.................................................................................................................... 28

# TABLE OF AUTHORITIES

**CASES**

*Ajax Realty Corp. v. J.F. Zook, Inc.*
   493 F.2d 818 (4th Cir. 1973) ........................................................................ 7

*Artis v. Greenspan*
   223 F. Supp. 2d 149 (D.D.C. 2002) ............................................................ 8

*Burger King Corp. v. Rudzewicz*
   471 U.S. 462 (1985) ..................................................................................... 25

*Burman v. Phoenix Worldwide Indus.*
   437 F. Supp. 2d 142 (D.D.C. 2006) ............................................................ 7

*Caribbean Broadcasting Sys., Ltd. v. Cable Wireless PLC*
   148 F.3d 1080 (D.C. Cir. 1998) ........................................................... 25, 26

*Companhia Brasiliera Carbureto de Calcio v. Applied Indus. Materials Corp.*
   35 A.3d 1127 (D.C. 2012) ............................................................................ 3

*Crane v. Carr*
   814 F.2d 758 (D.C. Cir. 1987) ............................................................... 4, 26

*Crane v. N.Y. Zoological Soc'y*
   894 F.2d 454 (D.C. Cir. 1990) ................................................................ 3, 7

*Diamond Chem. Co. v. Atofina Chems., Inc.*
   568 F. Supp. 2d 1 (D.D.C. 2003) .............................................................. 25

*Doe v. Three Rivers Behavioral Health*
   2021 S.C. C.P. LEXIS 1490 (S.C. Cir. Ct. April 28, 2021) .................... 19

*Edmond v. United States Postal Serv. Gen Counsel*
   949 F.2d 415 (D.C. Cir. 1991) .................................................................. 26

*First Am. Corp. v. Al-Nahyan*
   948 F. Supp. 1107 (D.D.C. 1996) .............................................................. 4

*Flocco v. State Farm Mut. Auto Ins. Grp.*
   752 A.2d 147 (D.C. 2000) .......................................................................... 25

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*
   592 U.S. 351 (2021) ............................................................................ 12, 25

*Gatewood v. Fiat, S. p.A.*

617 F.2d 820 (D.C. Cir. 1980)........................................................................................ 5, 7, 24

*GTE New Media Servs., Inc., v. BellSouth Corp.*
199 F.3d 1343 (D.C. Cir. 2000)................................................................................ 3, 4, 25

*Hanson v. Denckla*
357 U.S. 235 (1958)............................................................................................................. 23

*Harris v. Omelon*
985 A.2d 1103 (D.C. 2009)................................................................................................ 24

*Helicopteros Nacionales De Colombia v. Hall*
466 U.S. 408 (1984)............................................................................................................. 12

*International Shoe Co. v. Washington*
326 U.S. 310 (1945)............................................................................................................. 23

*Johnson -Tanner v. First Cash Fin. Servs.*
239 F. Supp. 2d 34 (D.D.C. 2003) .............................................................................. 22, 23

*K.E.E. v. Cumberland Hosp., LLC*
2021 Va. Cir. LEXIS 956 (Va. Cir. Ct. June 17, 2021) ......................................... 13, 20

*Khatib v. Alliance Bankshares Corp.*
846 F. Supp. 2d 18 (D.D.C. 2012) ................................................................................... 21

*Kundrat v. Dist. of Columbia*
106 F. Supp. 2d 1 (D.D.C. 2000) ....................................................................................... 3

*Lalabekyan v. Vaziri*
No. 23-01994 (AHA), 2025 U.S. Dist. LEXIS 30587 (D.D.C. Feb. 20, 2025).......................... 6

*Maljack Prods. v. Motion Picture Ass'n*
52 F.3d 373 (D.C. Cir. 1995)............................................................................................... 3

*McFarlane v. Esquire Magazine*
No. 91-0711 TAF, 1994 U.S. Dist. LEXIS 9497 (D.D.C. June 8, 1994) ..................... 7

*Media Matters for Am. v. Paxton*
138 F. 4th 563 (D.D.C. 2025) ........................................................................................... 21

*Moncrief v. Lexington Herald-Leader Co.*
807 F.2d 217 (D.C. Cir. 1986)............................................................................................. 4

*Mouzavires v. Baxter*
434 A.2d 988 (D.C. 1981).................................................................................................... 4

*Myers v. Holiday Inns, Inc.*
   915 F. Supp. 2d 136 (D.D.C. 2013) ........................................................................ 12

*Ramamurti v. Rolls-Royce, Ltd.*
   454 F. Supp. 407 (D.D.C. 1978) .......................................................................... 21

*Schwartz v. CDI Japan*
   938 F. Supp. 1 (D.D.C. 1998) ........................................................................ 15, 21

*Shoppers Food Warehouse v. Moreno*
   746 A.2d 320 (D.C. 2000) ............................................................................ 11, 23

*Stocks v. Cordish Co.*
   No. 14-cv-01999, 2015 U.S. Dist. LEXIS 96695 (D.D.C. July 25, 2015) ............................. 12

*Thompson Hine, LLP v. Taieb*
   734 F.3d 1187 (D.C. Cir 2013) ............................................................................ 5

*Vasquez v. Whole Foods Mkt, Inc.*
   302 F. Supp. 3d 36 (D.D.C. 2018) .......................................................................... 9

*World Wide Travel, Inc. v. Travelmate U.S., Inc.*
   6 F. Supp. 3d 1 (D.D.C. 2013) ............................................................................. 5

*World-Wide Volkswagen Corp. v. Woodson*
   444 U.S. 286 (1980) ....................................................................................... 24

## STATUTES

D.C. Code § 13-423 .................................................................................... 3, 4, 5, 21

## I.    INTRODUCTION

Plaintiffs' First Amended Complaint arises, in large degree, from the corporate conduct of Defendant Universal Health, Inc. ("UHSI") that caused injury to the Plaintiffs and Class Members in the District of Columbia.  Over the course of more than a decade, UHSI purposefully directed its corporate conduct at the District of Columbia.  Indisputably, UHSI's business in the District of Columbia has generated substantial revenue for the company.  Now, UHSI seeks to avoid the jurisdiction of District of Columbia courts despite engaging in years of intentional, ongoing, and concentrated business activities in the District, profiting off of District residents, and causing individual and class-wide injury in the District.

But UHSI cannot avoid the Court's jurisdiction.  As the Plaintiffs have demonstrated in their Amended Complaint and as discussed herein, UHSI has engaged in years of intentional and systematic business contacts with, and activities in, the District: it owns and controls a behavioral health facility (PIW) in the District (in addition to two other D.C. healthcare facilities); it controls a wholly owned subsidiary (UHS of Delaware, Inc. ("UHSD")) that is registered to do business in the District and is involved in managing and operating PIW in the District; it publicly represents that it conducts substantial business in the District; it publicly represents that it controls and operates PIW in the District; and it generates substantial revenue and profit from its business operations in the District.  This Court has personal jurisdiction over UHSI, and UHSI's motion to dismiss fails to dispel the Court's jurisdiction.

In its motion, UHSI unsuccessfully attempts to distance itself from the District of Columbia generally, and PIW specifically. UHSI relies on an attached Amended Affidavit of Michelle Carson, Esq., who identifies herself as the "Chief Litigation Counsel [of] UHS of Delaware, Inc."  Amended Affidavit of Michelle Carson ("Carson Aff."), ECF No. 31-2.  Ms. Carson prepared her affidavit based purportedly on "the performance of [her] role and duties for

UHSD as Chief Litigation Counsel, review of corporate records and public filings made in accordance with applicable law, and interviews with appropriately knowledgeable people." *Id*. at¶ 2. Ms. Carson does not identify the records and filings she reviewed nor the "appropriately knowledgeable people" with whom she spoke. Ms. Carson paints UHSI as a mere holding company that has no function as it pertains to the "day to-day operation"[1] of its facilities, including PIW. *Id*. at ¶¶ 13–14. UHSI uses Ms. Carson's affidavit to assert, quite remarkably and against considerable public evidence, that UHSI "conducts no business operations." UHSI Memorandum in Support of Motion to Dismiss ("UHSI Memo"), ECF No. 31-32 at 4.

UHSI's effort to paint itself as a pure holding entity that "conducts no business operations" is at odds with reality. UHSI is an active corporation that conducts business throughout thee United States, and in the District of Columbia. UHSI's business connections with the District are alleged in detail in Plaintiffs' Amended Complaint, shown in the exhibits to Plaintiffs' Amended Complaint, and demonstrated by UHSI's own myriad public statements and representations. Because of UHSI's transaction of business in the District of Columbia and its serial acts and omissions that have caused harm to Plaintiffs and Class Members in the District of Columbia, the D.C. long-arm statute confers the Court's personal jurisdiction over UHSI, and the Court's jurisdiction satisfies due process.

The Court should deny UHSI's motion to dismiss under Rule 12(b)(2).[2]

---

[1] Ms. Carson does not define "day-to-day operations," and this phrase is ambiguous, at best.

[2] Plaintiffs focus the whole of this opposition on UHSI's Rule 12(b)(2) motion, as UHSI provided no substantive support for its Rule 12(b)(1) and 12(b)(6) motion. UHSI instead incorporated the Rule 12(b)(1) and (6) arguments of its wholly owned subsidiary and co-defendant, UHSD. UHSI Memo at 7-8. Accordingly, Plaintiffs have filed a separate Opposition to UHSI and UHSD's joint motion to dismiss.

## II.    STANDARD OF REVIEW

A motion for dismiss for lack of personal jurisdiction "tests not whether the plaintiff will prevail on the merits, but instead whether or not the court may properly exercise jurisdiction over the movants." *Kundrat v. Dist. of Columbia*, 106 F. Supp. 2d 1, 4 (D.D.C. 2000).  "In deciding such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Id*. (citing *Maljack Prods. v. Motion Picture Ass'n*, 52 F.3d 373, 375 (D.C. Cir. 1995)).  At the pleadings stage, "a court ordinarily demands only a *prima facie* showing of jurisdiction by the plaintiffs." *Companhia Brasiliera Carbureto de Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1135, n.9 (D.C. 2012).  In determining whether a *prima facie* showing has been made, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

## III.    ARGUMENT

The D.C. long-arm statute, D.C. Code § 13-423, confers this Court's personal jurisdiction over UHSI, and moreover, asserting personal jurisdiction over this Defendant satisfies due process.

In the District of Columbia, "[t]o establish personal jurisdiction over a non-resident, a court must . . . first examine whether jurisdiction is applicable under the [District's] long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs., Inc.*, *v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  The D.C. long-arm statute authorizes specific personal jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from" contacts with the District.  D.C. Code § 13-423.  D.C. courts have specific personal jurisdiction over an out-of-

state defendant under several scenarios codified in D.C. Code § 13-423(a). Relevant here, "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's (1) transacting any business in the District of Columbia; . . . (3) causing tortious injury in the District of Columbia; [and] (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(1), (3), and (4).

"Section (a)(1)'s 'transacting any business clause generally has been interpreted to be coextensive with the Constitution's due process requirements" and therefore they "merge into a single inquiry." *GTE New Media Servs.,* 199 F.3d at 1347. Under Section (a)(1), "[a] defendant need not transact extensive business in the District of Columbia." *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1121 (D.D.C. 1996). "In fact, 'a nonresident defendant need not have been physically present in the District' to be subject to personal jurisdiction here." *Id*. (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981)). "Section (a)(3) "confers jurisdiction only over a defendant who commits an act in the District which causes an injury in the District, without regard to any other contacts." *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986).

Under Section (a)(4) "the business done or persistent course of conduct 'plus factor' is satisfied by connections considerably less substantial than those it takes to establish general, all-purpose 'doing business'-or 'presence'-based jurisdiction." *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987). This section "contemplates a connection that may be *un*related to the claim in suit" including whether the defendant derives substantial revenue from services rendered in the

District. *Id.* (emphasis added). "One who invokes section 13-423(a)(4) need not show that the injury in the District was directly related to the actual business solicitation, course of conduct or derivation of revenue." *Gatewood v. Fiat, S. p.A.*, 617 F.2d 820, 824 (D.C. Cir. 1980). Rather, the long-arm statute "requires only that the claim for relief arise out of an injury occurring in the District." *Id.* at 824. The D.C. Circuit has determined that whether a defendant is only an indirect seller or provider of goods and services in the District—but instead generates revenue from third parties—is "irrelevant" under the long-arm statute. *Id.*

The D.C. long-arm statute has been given an "expansive interpretation" rendering it "coextensive with the due process clause" of the U.S. Constitution. *World Wide Travel, Inc. v. Travelmate U.S., Inc.*, 6 F. Supp. 3d 1, 6-7 (D.D.C. 2013). Accordingly, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry: would exercising personal jurisdiction accord with the demands of due process?" *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir 2013) (internal citations omitted). So, if the Court finds that it has personal jurisdiction over UHSI under the long-arm statute, its jurisdiction also comports with due process.

### A. The District of Columbia Long-Arm Statute confers personal jurisdiction over UHSI.

As alleged in the Amended Complaint, this Court has personal jurisdiction over UHSI under D.C. Code § 13-423(a)(1), (3), and (4). *See* Amended Complaint, ECF No. 22 ("Am. Compl.") at ¶¶ 35–37. UHSI "has for years intentionally and voluntarily transacted business and continues to intentionally and voluntarily transact business in the District of Columbia." *Id.* at ¶ 35. The company "caused tortious injury to the Plaintiffs and putative Class Members through its acts and omissions" both inside and outside the District of Columbia, through "its ownership, operation, and control over PIW" and "through its corporate decision-making which has affected

and continues to affect the operation of PIW." *Id.* at ¶¶ 36–37. The Amended Complaint spends dozens of paragraphs describing and alleging UHSI's connections with the District of Columbia and the company's acts and omissions that caused tortious injury to the Plaintiffs and putative Class Members in D.C. Under each of these subsections, Plaintiffs have made a "*prima facie* showing of jurisdiction" over UHSI. *Lalabekyan v. Vaziri*, No. 23-01994 (AHA), 2025 U.S. Dist. LEXIS 30587, *6 (D.D.C. Feb. 20, 2025).

As alleged in the Amended Complaint, UHSI's corporate decision-making and conduct—even if outside the District—directly and indirectly affected their provision of services inside the District, from which Plaintiffs' injuries arise. UHSI conducts the following operations in the District of Columbia: directly or indirectly hiring, training, supervising, and compensating employees; procuring contracts; creating and implementing policies and procedures; creating and implementing billing practices; creating and implementing clinical education; advertising healthcare services; and directly or indirectly financing operations and overhead. Am. Compl. at ¶ 59. UHSI "owns, operates, and controls PIW in the District of Columbia, and acquires substantial revenue and profit from its ownership, operation, and control of PIW in the District of Columbia." *Id.* at ¶ 35.

UHSI is a corporation formed in Delaware with its principal place of business in Pennsylvania. Amended Complaint, ECF No. 22 ("Am. Compl.") at ¶¶ 29, 49. Contradicting Ms. Carson's attestation that "UHSI . . . does not provide healthcare services," Carson Aff. at ¶ 11, and UHSI's assertion that it "conducts no business operations," UHSI Memo at 4, UHSI publicly represents that "Universal Health Services, Inc. is one of the largest and most respected

providers of hospital and healthcare services in the U.S. and the United Kingdom."[3]  An

examination of UHSI's corporate conduct, organization, and representations and statements,

obtained through publicly available information, supports a *prima facie* showing that the

company transacts business in the District of Columbia and that its acts and omissions caused

injury in D.C.  This information, discussed below, contradicts Ms. Carson's attestations and the

assertions in UHSI's motion, creating factual discrepancies that "must be resolved in favor of the

plaintiff."  *Crane*, 894 F.2d at 456.

      1.  <u>UHSI derives substantial revenue from its behavioral healthcare facilities,
         including PIW.</u>

Under Section (a)(4) of the long-arm statute, a defendant's generation of substantial

revenue in the District can be dispositive in conferring personal jurisdiction. "'[S]ubstantial

revenue' in the context of section (a)(4), 'means enough revenue to indicate a commercial impact

in the forum, such that a defendant fairly could have expected to be hauled into court there."

*Burman v. Phoenix Worldwide Indus.*, 437 F. Supp. 2d 142, 153 (D.D.C. 2006) (quoting

*McFarlane v. Esquire Magazine*, No. 91-0711 TAF, 1994 U.S. Dist. LEXIS 9497, *17 (D.D.C.

June 8, 1994)). "[A] small percentage of the sales of a corporate giant may indeed prove

substantial in an absolute sense."  *Ajax Realty Corp. v. J.F. Zook, Inc.*, 493 F.2d 818 (4th Cir.

1973).  As the D.C. Circuit concluded in *Gatewood*, whether a corporate parent corporation

derived revenue in the District indirectly through third parties (in that case, by an Italian auto

manufacturer (Fiat) through car dealerships in Washington, D.C. and the D.C. suburbs) is

"irrelevant" to the Section (a)(4) analysis.  *Gatewood*, 617 F.2d at 827.

---

[3] Universal Health Services, Inc., "UHS Fact Sheet," *available at* https://uhs.com/fact-sheet/#:~:text=Business%20and%20Financial%20Stewardship%20Recognition,of%20$15.8%20billion%20in%202024 (last visited July 8, 2025).

For years, UHSI has represented that it generates revenue from its healthcare operations. For example, in the fourth quarter of 2024, UHSI generated $4.11 in net revenue.  **Exhibit A**, UHSI Press Release at 1; *see also id*. at 4 (UHSI Consolidated Statements of Income).[4]  UHSI's net revenues are generated, in large part, from UHSI's behavioral health care services.  *Id*. at 2; *see also id.* at 11 (documenting $1.727 billion in net revenues from UHSI "Behavioral Health Care Services" in the fourth quarter of 2024).  UHSI promotes an increase in its "net revenue per adjusted [patient] admission" at "our behavioral health care facilities."  *Id*. at 2.  UHSI states: "Net revenues *generated from our behavioral health care services*, on a same facility basis, increased by 10.7% during 2024, as compared to 2023."  *Id.* (emphasis added).  PIW is one of UHSI's "behavioral health care facilities." As UHSI states, "[a] significant portion of our revenues are derived from federal and state government programs including the Medicare and Medicaid programs." *Id*. at 4.

Plaintiffs have alleged that UHSI derives substantial revenue from its operations in the District of Columbia.  Here, unlike in *Gatewood*, no discovery has been conducted as to the precise amount of revenue UHSI derives from its business activities in the District and the means by which it attains this revenue. But Plaintiffs have alleged this fact, which is supported through publicly available information.  And Ms. Carson's affidavit and UHSI's motion is noticeably silent as to this allegation.

Certainly, if UHSI did *not* derive substantial revenue from services in the District of Columbia, Ms. Carson could have attested as such and UHSI could have provided factual support to rebut Plaintiffs' allegation.  Instead, UHSI vaguely suggests that it has a "complex

---

[4] "A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction."  *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).

corporate structure[].” UHSI Memo at 6. Using language from a case involving a different corporation altogether, UHSI appears to suggest that it earns income in the District “indirectly through the shares it holds in” its subsidiaries. *Id*. (quoting *Vasquez v. Whole Foods Mkt, Inc.*, 302 F. Supp. 3d 36, 52 (D.D.C. 2018)). UHSI argues, in conclusory manner and without any factual analysis or elaboration, that “PIW’s earnings from operating in the District cannot be imputed to holding company UHSI.” *Id*.

But beyond copying and pasting language from a case involving Whole Foods Market, UHSI fails to provide any information, whatsoever, about its “complex corporate structure” such that it precludes the generation and derivation of revenue—directly or indirectly—by UHSI in the District. And Ms. Carson does not even address this fact. Plaintiffs have sufficiently alleged—and UHSI’s own representations support—that the company derives substantial revenue from this District of Columbia, such that this Court has personal jurisdiction pursuant to section (a)(4) of the D.C. long-arm statute.

      2.   <u>UHSI advertises PIW as one of “Our Locations,” advertises its services in the District of Columbia, and purposefully markets to D.C. residents.</u>

Ms. Carson and UHSI attempt to physically distance the company from the District of Columbia, attesting, *inter alia*, that “UHSI does not own or lease the real estate where PIW is located,” Carson Aff. at ¶ 10, and that “UHSI does not maintain an office, mailing address, or telephone number in the District of Columbia.” *Id*. at ¶ 9; *see also* UHSI Memo at 4. In contrast to its litigation position, UHSI publicly lists PIW on its own website—along with two other Washington, DC facilities—as one of “Our Locations.” [5] This facility is listed as a location of

---

[5] Universal Health Services, Inc., “Our Network of Care,” *available at* https://uhs.com/our-locations/ (last visited July 5, 2025).

UHSI, and not that of any of its subsidiaries (including UHSD), complete with the "Universal Health Services, Inc." logo displayed prominently at the top of the page. UHSI encourages prospective consumers to "Find a UHS Behavioral Health Location Near You" and recommends that prospective consumers "[s]earch by location, level of care and more to find a treatment program that works for you." UHSI tells prospective consumers that it is "focused on making healthcare a more enriching, local experience." As part of its search function, UHSI provides contact information—phone, address, and web address—for its facilities, including PIW.

In doing so, UHSI advertises its services in the District and purposefully seeks the business of District of Columbia residents. *See* Am. Compl. at ¶ 34 (alleging that the Court has personal jurisdiction over UHSI because it "marketed . .. the services provided by PIW in the District of Columbia."). Ms. Carson and UHSI do not address this fact.

A screenshot of UHSI's webpage on which it advertises PIW (along with two other D.C. medical facilities) as one of its "Locations," is excerpted below for the Court's reference:



When a non-resident company "purposefully solicit[s] District residents as customers" it transacts business in the District and can "reasonably anticipate[] being haled into court to defend" a lawsuit in the District.  *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 322 (D.C. 2000).  When District consumers are directly solicited by an out-of-state company, "there can be no doubt that its advertising relates to or has a discernable relationship to a claim by a District resident who becomes a customer" and suffers injury.  *Id*. at 335–36.   Here, UHSI directly and intentionally advertised its services in the District of Columbia, specifically at PIW, and purposefully targeted District of Columbia consumers such as the Plaintiffs and Class Members as prospective patients and sources of revenue.  This continuous and ongoing activity is sufficient to confer personal jurisdiction, particularly since UHSI fails to contest or otherwise address this jurisdictional allegation.  *See id.*; *see also Myers v. Holiday Inns, Inc.*, 915 F. Supp.

2d 136, 141 (D.D.C. 2013) (recognizing that personal jurisdiction over out-of-state defendant is appropriate when "it is reasonable . . . for the defendants to anticipate that their advertisements would induce customers into shopping" at a D.C. location); *Stocks v. Cordish Co.*, No. 14-cv-01999, 2015 U.S. Dist. LEXIS 96695, *15 (D.D.C. July 25, 2015) ("[T]he court concludes that Plaintiff's specific, uncontested factual averment about Cordish's advertising in the District of Columbia, and his allegation that his claim arose from that advertising, is sufficient . . . to avoid dismissal of its complaint under Rule 12(b)(2)."). The U.S. Supreme Court in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.* concluded that when Ford had "systematically served a market in Montana and Minnesota" including through advertising, there was "a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." 592 U.S. 351, 365 (2021) (quoting *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984)). While *Ford* involved the advertisement and sale of automobiles and the instant case involves the advertisement provision of behavioral health services, the *Ford* analysis applies directly and supports the Court's jurisdiction over UHSI.

3. <u>UHSI publicly lists jobs for PIW and solicits applications.</u>

UHSI publicly solicits job applications for PIW, which are listed on its "UHS Careers" webpage.[6] Again, this is a website for UHSI, not any of its subsidiaries, as shown by the conspicuous "Universal Health Services, Inc." logo at the top of the page and the web address itself (jobs.uhsinc.com). As of the date of this Opposition, UHSI lists 36 open positions for PIW on its "Careers" webpage, for which interested applicants can "Apply Now." A screenshot of this webpage is excerpted below for the Court's reference.

---

[6] Universal health Services, Inc., "Careers," *available at* https://jobs.uhsinc.com/careers/jobs?page=1&tags4=Psychiatric%20Institute%20of%20Washington (last visited July 5, 2025).



UHSI's public listing of open positions and solicitation of jobs at PIW directly contradicts Ms. Carson's statement that "UHSI does not . . . have any involvement in the hiring, training, or supervision of PIW's employees, including any PIW staff who treated any of the named Plaintiffs in this case."   Carson Aff. at ¶ 15.  Clearly, UHSI has direct involvement in, at minimum, the hiring of PIW staff, as they actively seek and solicit candidates for employment.

Other courts have found UHS, Inc.'s posting of facility job applications probative of personal jurisdiction.  For example, in *K.E.E. v. Cumberland Hosp., LLC*, 2021 Va. Cir. LEXIS 956 (Va. Cir. Ct. June 17, 2021), the court discussed UHS, Inc.'s direct contacts with the forum state (Virginia), noting "job postings found on UHS Inc.'s website for open positions in Virginia facilities." *Id*. at *6.  Ultimately, the court in *K.E.E.* determined that it had personal jurisdiction over UHSI because of this evidence, along with evidence that "UHS Inc. funnels money into its

subsidiary health care facilities," the "Qui Tam Agreement" (discussed *infra* and at length in the

Amended Complaint), and the recent U.S. Supreme Court decision of *Ford Motor Co. v.*

*Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), in which the Court rejected a "causation-

only" test for personal jurisdiction.

    4.  <u>PIW officers and staff represent that they are UHSI employees or agents.</u>

       Contrary to UHSI's efforts to paint PIW as a distinct corporate entity with no business

connection to UHSI, PIW officers and staff in the District of Columbia are controlled by UHSI

and publicly affiliated with UHSI.  Am. Compl. at ¶ 42.  PIW staff have "@uhsinc.com" email

addresses and hold themselves out to be employees and/or agents of Universal Health Services,

Inc.  *Id*. (alleging that the PIW "Director of Clinical Services and Chief Medical Officer have

'@uhsinc.com' email addresses and hold themselves out to be employees and/or agents of

'Universal Health Services – Psychiatric Institute of Washington' in email communications.").

By way of example, a screenshot of the email signature for Shannon Lott, PIW Director of

Clinical Services, is below:

**Shannon Lott, LPC** | Director of Clinical Services
**Universal Health Services - Psychiatric Institute of Washington**
<u>4228 Wisconsin Avenue, NW</u> | <u>Washington, DC 20016</u>
Email: <u>shannon.lott@uhsinc.com</u> | ████████████████

In addition to Ms. Lott, other PIW staff and officers, including Chief Nursing Officer Nicole

Parker and Chief Medical Officer and Director of Medical Education Dr. Shahbaz Khan, have

UHSI ("@uhsinc.com") email addresses.[7]  If PIW and UHSI were indeed wholly distinct and

---

[7] Psychiatric Institute of Washington, "Clinical Training," *available at*
https://psychinstitute.com/careers/clinical-

14

separate, and if PIW operated in the District of Columbia without any involvement of UHSI as Ms. Carson attests, it remains unclear why PIW executives and officers would publicly hold themselves out to be agents of UHSI.

This evidence supports an inference that PIW staff and employees are agents of UHSI who operate in the District of Columbia. "The acts of a corporation's agent may create personal jurisdiction over the corporation in the District." *Schwartz v. CDI Japan*, 938 F. Supp. 1, 7 (D.D.C. 1998). At minimum, this is evidence that contradicts Ms. Carson's affidavit and creates a factual discrepancy as to the level of control that UHSI has over PIW employees in the District of Columbia.

5.  <u>UHSI creates and disseminates policies and procedures that govern PIW.</u>

UHSI creates and disseminates policies governing the operation and management of PIW. UHSI created and disseminated a "Code of Conduct," attached to the Amended Complaint as Exhibit A (ECF No. 22-2). This Code of Conduct is a copyright of "Universal Health Services, Inc." Am. Compl. Ex. A at 29. The Code of Conduct "provides guidance for everyone at UHS." *Id.* at 5. The Code states that UHSI's "Board of Directors and leadership are committed to compliance with all laws and regulations that govern our organization." *Id.* at 7. The Code sets policies and guidelines for the operation of UHS facilities, including PIW, on a number of topics, including "billing and coding integrity" (Page 12); "maintaining a respectful work environment" (Page 14); "relations with patients and their families" (Page 22); "public relations, marketing and advertising" (Page 23); "price transparency" (Page 24); and the "UHS Compliance Program" (Page 25). These are company-wide policies, standards, and guidelines, with application to PIW

---

training/#:~:text=For%20more%20information%20on%20our,.lott%40uhsinc.com (last visited July 5, 2025).

and all other UHS facilities.  Indeed, the Code of Conduct expressly applies "to all who work with or for UHS including physicians, volunteers, researchers, contractors and suppliers."  *Id*. UHSI's Code of Conduct corroborates Plaintiffs' allegation that UHSI "controls or is otherwise involved in . . . [c]reation and implementation of policies and procedures" at PIW in the District of Colu,bia.  Am Compl. at ¶ 59.c.  Notably, Ms. Carson does not dispute or otherwise address this allegation in her Affidavit.

UHSI provides its "Governance Documents" on its "Corporate Governance" website.[8] These documents include the Code of Conduct, Code of Business Conduct and Corporate Standards, and UHS Code of Ethics for Senior Financial Officers.  The site also provides several "Committee Charters," including the "Quality and Compliance Committee Charter," which is attached as **Exhibit B**.  This Charter describes UHSI's creation of a "Quality and Compliance Committee" made up of members of the UHSI board and charged with reviewing UHSI's "policies and procedures relating to healthcare-related regulatory and compliance issues *and the delivery of quality medical care to patients*."  Ex. B at 1 (emphasis added).  The Committee— which, again, is a creation and arm of UHSI—has "direct responsibility" for "[o]verse[ing] the information, policies, procedures and reporting systems [UHSI] *and its subsidiaries* have in place to provide reasonable assurance that: (1) the operations of the Company and its subsidiaries comply with all federal and state laws and regulations applicable to healthcare providers; and (2) the Company and its subsidiaries deliver quality medical care to patients and promote safety." *Id*.  The Charter continues, noting UHSI's control over and review of "quality, clinical risk, patient safety and performance improvement."  *Id*. at 2.  The Charter describes UHSI's role in

---

[8] Universal Health Services, Inc., "Universal Health Services, Inc. Corporate Governance Guidelines," *available at* https://ir.uhs.com/corporate-governance (last visited July 5, 2025).

reviewing data relating to its inpatient behavioral health facilities, including such facilities' "average length of stay." *Id*.

This Charter, and the development and responsibility of UHSI's Quality and Compliance Committee, directly contradicts Ms. Carson's contention that UHSI is "does not provide healthcare services," Carson Aff. at ¶ 10, "is not involved with decisions involving medical assessment, evaluation, diagnosis, admission, treatment, transfer, discharge, or billing" at PIW, Carson Aff. at ¶ 13, and is otherwise divorced from operational control of its subsidiary facilities including PIW.

On this same website, UHSI states "[t]he Company's business is conducted by its employees, managers and officers under the oversight of the Board."[9]  This statement again contravenes the attestation by Ms. Carson that "UHSI is not involved with decisions" involving PIW's operations and management, Carson Aff at ¶ 13, and more generally UHSI's assertion that it "conducts no business operations."   UHSI Memo at 4.  UHSI's own public-facing statements and representations show indicia of control over the operations and management of PIW in the District of Columbia, giving rise to the Court's personal jurisdiction over the company.

  6. <u>UHSI entered into a Corporate Integrity Agreement governing PIW services.</u>

In 2020, UHSI (along with UHS of Delaware) agreed to pay $122 million to resolve allegations of the False Claims Act "for billing for medical unnecessary inpatient behavioral health services, failing to provide adequate and appropriate services, and paying illegal inducements to federal healthcare beneficiaries."  Am. Compl. at ¶¶ 79–80 (citing https://www.justice.gov/archives/opa/pr/universal-health-services-inc-and-related-entities-pay-122-million-settle-false-claims-act).  UHSI then entered into a corporate integrity agreement

---

[9] *Id*.  "The Company" is defined expressly as "Universal Health Services, Inc."

(CIA) with the Office of the Inspector General of the U.S. Department of Health and Human Services, through which it agreed to numerous actions involving, *inter alia*, provision of healthcare services, training for employees, monitoring quality control, risk assessment, and submission of claims. Am. Compl. at ¶ 83. The Settlement Agreement and CIA are discussed at length in Plaintiffs' Amended Complaint, and the CIA is attached hereto as **Exhibit C**. The Settlement Agreement and CIA apply expressly to PIW. Am. Compl. at ¶ 79.

Under the CIA, UHSI made express agreements relating to the provision of services at PIW and other facilities. Notably, UHSI agreed to "[d]evelop and implement a training plan for employees, owners, officers, directors, contractors, subcontractors, and agents." Am. Compl. at ¶83.c.; Ex. C at 9. UHSI agreed that this "training plan" should "include training to address quality of care problems" and should concern, *inter alia*, "policies, procedures, and other requirements applicable to the documentation of medical records." Ex. C at 9. UHSI further agreed to "develop and implement written Policies and Procedures regarding the operation of [its] compliance program" and to "enforce its Policies and Procedures" addressing "[m]edical necessity of patient admission; [a]ppropriate use of involuntary commitment; [m]edical necessity of continuing stays; [t]he requirement to provide active and individualized treatment; [p]hysician participation in and supervision of care; [t]he proper use and monitoring of physical and chemical restraints and seclusion; [i]nterdisciplinary, patient-centered, care planning; and [a]ppropriate staffing levels, qualification, licensure, supervision, and training to meet patients' needs and to comply with Federal and State requirements." Am. Compl. at ¶ 83.b.; Ex. C. at 8– 9. Presumably, UHSI has complied with these requirements.

The CIA is evidence of UHSI's control over the operations and management of its facilities, including PIW. This evidence which directly contradicts Ms. Carson's suggestion that

UHSI "does not provide healthcare services" (Carson Aff. at ¶ 11), that UHSI is not "involved with decisions involving medical assessment, evaluation, diagnosis, admission, treatment, transfer, discharge, or billing" (Carson Aff. at ¶ 13); that "UHSI does not provide day-to-day[10] operational management services or administrative services for PIW" (Carson Aff. at ¶ 14); and that UHSI does not "have any involvement in the hiring, training, or supervision of PIW's employees."  (Carson Aff. at ¶ 15).

In *Doe v. Three Rivers Behavioral Health*, 2021 S.C. C.P. LEXIS 1490 (S.C. Cir. Ct. April 28, 2021), the Court of Common Pleas of South Carolina found personal jurisdiction over UHSI, due, in part,[11] to the entry of the CIA.  The court noted that "UHS [Inc.] has contracted in South Carolina for purposes other than acquiring common stock as evidenced by the Corporate Integrity Agreement ("CIA") UHS entered with the U.S. Department of Justice requiring UHS to be responsible for 'staffing-related issues or concerns' and the determination of 'whether the patients . . . are receiving the quality of care and quality of life' consistent with industry standards." *Id*. at *5.  The court further concluded that "based on the CIA and the previously established compliance committee UHS undoubtedly has control over [the facility's] operations." *Id*. at *6.  The Virginia court in *K.E.E. v. Cumberland Hosp*. found personal jurisdiction over UHSI pursuant to the Virginia long-arm statute, despite consideration of a nearly-identical affidavit by Michelle Carson as that submitted in the instant case.  The *K.E.E.* court noted that the "Qui Tam Agreement" was an "example[] of a contract[] entered into by UHS Inc. for the

---

[10] Again, "day-to-day" is not defined, and is so ambiguous as to be meaningless for the purposes of a personal jurisdiction analysis.

[11] The court also observed that "Three Rivers' chief executive officer's official email address is under UHS's domain" and "employment applications for potential Three Rivers' employees, including interns, assistants, registered nurses, are processed through UHS's website."  *Id*. at *6.

provision of health care services or the management thereof" in the forum state. 2021 Va. Cir. LEXIS 956, *10. The court found this evidence arose "out of and/or relate[d] to UHS Inc.'s operation and support of Cumberland Hospital which is where the allegations set forth in the Complaint occurred." *Id*. Here, likewise, the entry of a CIA by UHSI, which applies directly to the operation and control of PIW, is *prima facie* evidence that UHSI transacts business in the District of Columbia and that its acts and omissions affect the provision of services at PIW.

In sum, Plaintiffs have shown that UHSI generates and derives substantial revenue through its operations in the District of Columbia, advertises its services in the District of Columbia and purposefully markets to D.C. residents, solicits job applications for PIW employment in the District of Columbia, publicly holds out PIW employees and management as UHSI agents, creates and disseminates policies and procedures that govern the operations of PIW in the District of Columbia, and has entered an agreement with the federal government to directly and intensively control the operations, management, and delivery of patient services at PIW. Plaintiffs have made a *prima facie* showing that this Court has personal jurisdiction over UHSI under Sections (a)(1), (3), and (4) of the D.C. long-arm statute.

### B. The Court may exercise personal jurisdiction over UHSI based on the contacts of its agent, UHSD.

UHSD is a wholly owned subsidiary of UHSI registered in the District of Columbia that has transacted business in the District for years, including through the administration and management of PIW. Am. Compl. at ¶ 30. This Court's personal jurisdiction over UHSD is not in dispute, nor does UHSD raise this defense. While the D.C. long-arm statute confers jurisdiction over UHSI directly through the company's own actions, as discussed *supra*, the statute also confers jurisdiction over UHSI through the actions and contacts of its agent, UHSD.

"The acts of a corporation's agent may create personal jurisdiction over the corporation in the District." *Schwartz*, 938 F. Supp. at 7 (D.D.C. 1998). "The D.C. long-arm statute authorizes D.C. courts to 'exercise personal jurisdiction over a person, who acts directly *or by an agent*, as to a claim for relief arising from the person's transacting business in the District.'" *Media Matters for Am. v. Paxton*, 138 F. 4th 563, 574 (D.D.C. 2025) (quoting D.C. Code § 13-423(a)(1)). In the context of a parent company-subsidiary relationship, "[i]f the subsidiary is merely an agent through which the parent conducts business in the jurisdiction . . . then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary." *Ramamurti v. Rolls-Royce, Ltd*., 454 F. Supp. 407, 409 (D.D.C. 1978) (quoting 4 Wright & Miller, *Federal Practice and Procedure*, § 1069, at 256 (1969)). The test for imputation of contacts from subsidiary to parent is satisfied when the "subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative perform them, the corporation's own officials would undertake to perform substantially similar services." *Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 32 (D.D.C. 2012).

It is undisputed that UHSD acts on UHSI's behalf in conducting management and operations in the District of Columbia. *See* ECF 30-1 at 5 (describing UHSD as a "UHSI subsidiary that provides administrative support services to . . . PIW."). In public documents and statements, including those to government agencies such as the SEC, UHSI and UHSD refer to

themselves collectively as "UHS." Am. Compl. at ¶ 31. On UHSI's own investor relations

webpage,[12] the company makes the following disclaimer:

> UHS is a registered trademark of UHS of Delaware, Inc., a subsidiary of
> Universal Health Services, Inc. Universal Health Services, Inc. is a holding
> company that operates through its subsidiaries. All healthcare and management
> operations are conducted by subsidiaries of Universal Health Services, Inc. To the
> extent there is any reference to "UHS" or "UHS facilities" on this website,
> including any statements, articles or other publications contained herein which
> related to healthcare or management operations, they are referring to Universal
> Health Services, Inc.'s subsidiaries. Further, the terms "we," "us," "our" or "the
> company" in such context similarly refer to the operations of the subsidiaries of
> Universal Health Services, Inc. Any reference to employment at UHS or
> employees of UHS refers to employment with one of the subsidiaries of Universal
> Health Services, Inc.

UHSI intentionally blurs the lines between itself and UHSD, using a singular trademark to apply

to both companies and referring to both companies collectively as "UHS" or the collective "we."

While, again, Plaintiffs submit that the D.C. long-arm statute applies directly to UHSI

through its own contacts, acts, and omissions, imputation of UHSD's D.C. contacts is also

warranted here. As demonstrated throughout Exhibit A, including the consolidated statement of

income, UHSI claims as its own revenue those earnings attained through its health facilities

which are presumably managed by UHSD. In *Johnson -Tanner v. First Cash Fin. Servs.*, 239 F.

Supp. 2d 34, 39 (D.D.C. 2003), the Court looked at several factors in determining "unity of

interest and ownership" between a parent and a subsidiary for jurisdictional purposes, noting "a

commingling of funds or other assets [and] a diversion of one corporation's funds to the other's

uses." Here, based on UHSI's own public representations, earnings and income attained by

UHSD through its management of PIW are diverted and directed to UHSI. As discussed *supra*,

through its committees and operational review process, UHSI also maintains a "high degree of

---

[12] Universal Health Services, Inc., "Investor Overview," *available at* https://ir.uhs.com/ (last
visited July 5, 2025).

oversight and management activity" over its behavioral health facilities which are presumably managed by UHSD, including overseeing quality control, risk management, and the creation and implementation of policies and procedures. *Johnson-Tanner*, 239 F. Supp. 2d at 40.

UHSD is an agent and *alter ego* of UHSI, and its contacts with the District of Columbia should impute to UHSI. Accordingly, under the agency/*alter ego* theory, this Court has jurisdiction over UHSI under the D.C. long-arm statute.

### C.  Personal jurisdiction over UHSI satisfies due process.

The Due Process Clause of the United States Constitution permits a court to exercise personal jurisdiction over a non-resident defendant so long as there are sufficient "minimum contacts" between the defendant and the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant has sufficient minimum contacts "whenever the defendant has purposefully directed its activities at residents of the forum, and the litigation has resulted from alleged injuries that arise out of or relate to those activities." *Shoppers*, 746 A.2d at 330; *see also Johnson -Tanner*, 239 F. Supp. 2d at 37 ("Such minimum contacts are established where a defendant 'purposefully avails' itself of the privilege of conducting activities within the forum jurisdiction such that the defendant 'should reasonably anticipate being haled into court' there.") (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

As discussed at length above, UHSI has more than a decade of systematic, purposeful contacts with the District of Columbia.  It generates and derives substantial revenue from the District of Columbia through its purposeful and intentional business contacts in the District.  The "minimum contacts" analysis is satisfied for the reasons discussed in the preceding section, *supra*, and Plaintiffs incorporate those arguments here.

If sufficient minimum contacts are established, the final inquiry is whether hauling an out-of-state defendant into the forum state for the purpose of litigation is consistent with fair play and substantial justice. A defendant's interests in avoiding litigation in a foreign forum must be considered in light of other factors that bear on the "reasonableness" of exercising jurisdiction, including:

- The forum state's interest in adjudicating the dispute;

- The plaintiff's interest in getting convenient and effective relief;

- The burden on the defendant in defending the lawsuit; and

- The interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering substantial social policies.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *see also Harris v. Omelon*, 985 A.2d 1103, 1105 (D.C. 2009). UHSI does not address these factors in its motion. In a case such as this, with a well-heeled global defendant with experienced and competent counsel in and around the District of Columbia, no reasonable argument can be made that the negligible burdens of defending an action in D.C. outweigh the convenience of litigating the action in the District, where the subject incidents and injuries occurred, and the District's interest in adjudicating the dispute. *See, e.g.*, *Gatewood*, 617 F.2d a 827-28 (D.C. Cir. 1980) (rejecting defendant's argument that personal jurisdiction was not consistent with fair play and substantial justice, noting D.C's "interest in preventing defective products from crossing its borders and causing injury," as well as the fact that "the witnesses to the accident may be residents of the District [and] [Plaintiff] was treated in a District hospital").

As discussed in the preceding section, *supra*, UHSI has for years intentionally and purposefully marketed its services in the District of Columbia. Nonetheless, UHSI argues in passing that "it did not reasonably anticipate being haled into court here." UHSI Memo at 7

(internal citation omitted).  But as the U.S. Supreme Court recognizes, when a company "regularly market[s]" its services or goods in a state, it has "'clear notice' that it will be subject to jurisdiction in the State's courts."  *Ford*, 592 U.S. 351, 368 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).  As with the forum state in *Ford*, "principles of 'interstate federalism' supports jurisdiction" in the District of Columbia, as the District has a "significant interest[]" in providing residents "with a convenient forum for redressing injuries inflicted by out-of-state actors."  *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)).

### D.  Alternatively, the Court should permit limited jurisdictional discovery.

If the Court determines that Plaintiffs have not made a *prima facie* showing of personal jurisdiction, Plaintiffs should be afforded jurisdictional discovery to gain information as to a) UHSI's business activities in and contacts with the District of Columbia, and b) UHSI's control over and unity of ownership with its subsidiaries, UHSD and PIW.  Jurisdictional discovery would clarify the issues presently before the Court and assist the Court in rendering an appropriate ruling.  Plaintiffs submit that they have a good-faith belief that, if jurisdictional discovery is permitted, Plaintiffs will conclusively demonstrate to the Court that it should exercise personal jurisdiction over UHSI.

The decision to permit jurisdictional discovery is within the sound discretion of the trial court.  *Flocco v. State Farm Mut. Auto Ins. Grp.*, 752 A.2d 147, 164 (D.C. 2000); *see also Caribbean Broadcasting Sys., Ltd. v. Cable Wireless PLC*, 148 F.3d 1080, 1089-1090 (D.C. Cir. 1998).  "This Circuit's standard for permitting jurisdictional discovery is quite liberal." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 568 F. Supp. 2d 1, 15 (D.D.C. 2003).  A "plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."  *Id.* (citation omitted); *see also GTE New Media Servs.*, 199 F.3d

at 1351 ("[If] a party demonstrates that it can supplement its jurisdictional allegations through

discovery, then jurisdictional discovery is justified.").

To be entitled to jurisdictional discovery, a plaintiff must merely show that he has a good

faith belief that discovery will enable the plaintiff to demonstrate that the Court has personal

jurisdiction over the out-of-state defendant.  *Caribbean Broadcasting*, 148 F.3d at 1090; *see also*

*Crane*, 814 F.2d at 764 (vacating dismissal based on lack of jurisdiction and remanding to allow

plaintiff to engage in reasonable discovery addressed to personal jurisdiction).  When a plaintiff

possesses such a good faith belief, a court abuses its discretion when it dismisses a case for lack

of personal jurisdiction before the plaintiff has an opportunity to conduct jurisdictional discovery.

*See, e.g., Edmond v. United States Postal Serv. Gen Counsel*, 949 F.2d 415 (D.C. Cir. 1991).

Here, the evidence discussed in Section III.A., *supra*, which demonstrates the close ties

between UHSI and the District of Columbia, creates a sufficient predicate for Plaintiff's good-

faith belief that jurisdictional discovery will establish that this Court has personal jurisdiction

over this Defendant.

Specifically, Plaintiff seeks to propound interrogatories and requests for production on

UHSI requesting relevant information, including but not limited to:

- UHSI's historical revenue generated in the District of Columbia;

- The means by which UHSI attained its revenue in the District of Columbia;

- The acquisition of PIW;

- The type and nature of UHSI's services performed in the District of Columbia;

- UHSI's advertisements and marketing in the District of Columbia;

- UHSI's employees and agents working in the District of Columbia and the nature
  of work performed;

- UHSI's real estate holdings and properties in the District of Columbia and the nature of work performed therein;

- A detailed description of the corporate relationship between UHSI and UHSD;

- UHSI's communications and contacts with the District of Columbia government;

- UHSI's compliance with the CIA as it pertains to PIW; and

- The creation and dissemination of UHSI policies, standards, and procedures.

Additionally, Plaintiffs intend to take the deposition of Ms. Carson to gain more information and elaboration as to the statements set forth in her Amended Affidavit, which are uniformly cursory and vague. Plaintiffs also intend to take the deposition of a corporate representative, pursuant to Fed. R. Civ. P. 30(b)(6) who can testify on behalf of UHSI about the business and contacts in and with the District of Columbia. Once this discovery is conducted, Plaintiffs will be able to provide this Court with a fulsome fact record clearly demonstrating the Court's specific personal jurisdiction over UHSI. In light of Plaintiffs' good-faith belief that UHSI has sufficient minimum contacts with the District of Columbia to warrant jurisdiction under the D.C. long-arm statute and the requirements of federal due process, Plaintiffs should be afforded jurisdictional discovery to counter UHSI's affirmative defense.

Accordingly, Plaintiffs respectfully request that the Court permit Plaintiffs to conduct jurisdictional discovery over the next ninety (90) days, after which the parties can re-brief the issue of personal jurisdiction over UHSI. Plaintiffs submit the following proposed schedule:

October 9, 2025:      Deadline for conducting jurisdictional discovery

November 9, 2025:     Deadline for UHSI to re-file their motion **or** file an Answer to Plaintiffs' Amended Complaint

November 15, 2025:    Deadline for Plaintiffs to file Opposition to UHSI's re-filed Motion

27

## IV.    CONCLUSION

Based on the foregoing reasons, the Court has personal jurisdiction over UHSI.  The Court should accordingly deny UHSI's Rule 12(b)(2) motion to dismiss.  Alternatively, the Court should permit Plaintiffs to conduct limited jurisdictional discovery.

Respectfully submitted,

*/s/ Drew LaFramboise*
Veronica Nannis  (# 485151)
Drew LaFramboise (# 1018140)
Lacey McMullan (#1012025)
**JOSEPH, GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD  20770-1417
Ph: (240) 553-1209
F: (240) 553-1740
vnannis@jgllaw.com
dlaframboise@jgllaw.com
lmcmullan@jgllaw.com

Thomas W. Keilty (*pro hac vice* anticipated)
**KEILTY BONADIO**
One South Street
1 South Street, Suite 2125
Baltimore, MD 21202
(410) 469-9953
tkeilty@kblitigation.com

*Counsel for Plaintiffs and the Putative Class*

28

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of July, 2025, the foregoing was served on all counsel of record through the Court's CM/ECF system.

*/s/ Drew LaFramboise*